UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KEITH HART and SEAN RYAN,

                                              DECISION and ORDER

                          Plaintiffs,

-vs-                                          6:16-CV-6808 CJS

DALE ARTUS, Superintendent of
Attica Correctional Facility, STUART
ECKARD, J. DONOHUE, Offender
Rehabilitation Coordinator of Attica
Correctional Facility, ANTHONY ANNUCCI,
Acting Commissioner of the NYSDOCCS,
JOSEPH BELLNIER, Deputy Commissioner
of the NYSDOCCS, and DON VENETTOZZI,
Director of Special Housing and Inmate
Discipline of the NYSDOCCS, all individually
and in their official capacities,

                          Defendants.
_____

INTRODUCTION

        Plaintiffs are prison inmates in the custody of the New York State Department of

Corrections and Community Supervision ("DOCCS") who bring this action under 42

U.S.C. § 1983 to challenge the constitutionality of their continued long-term confinement

in "Central Office Administrative Segregation" ("Central Office Ad Seg").  The Complaint

contends that Plaintiffs and other Central Office Ad Seg inmates are kept indefinitely in

the Special Housing Unit ("SHU") with no realistic chance of release, resulting in violations

of their federal constitutional rights to due process and humane living conditions.  Now

before the Court are two applications by Defendants:  A motion (ECF No. 33) to partially

1

dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6); and, a motion (ECF No. 34) to strike affidavits filed by Plaintiffs in opposition to the motion to dismiss. For the reasons discussed below, the motion to strike is denied and the motion to dismiss is granted in part and denied in part.

BACKGROUND

Plaintiffs Keith Hart ("Hart") and Sean Ryan ("Ryan") have each been in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") for several decades.[1] Both were initially placed in DOCCS custody after being convicted of separate and unrelated murders and robberies. Ryan subsequently was convicted of an additional murder (as well as arson) while in DOCCS custody, after he killed a co-defendant who had testified against him at trial.[2] Ryan was also convicted of additional criminal conduct while in DOCCS custody, including an assault on DOCCS staff.[3] Hart is presently serving an aggregate sentence of 42 years to life, while Ryan is serving an aggregate sentence of 70 years to life.[4]

Hart and Ryan have each been involved in several attempted or completed

---

[1] Ryan originally entered DOCCS' custody in 1978, following his conviction for murder and robbery. According to a decision of the New York State Supreme Court, Appellate Division Third Department, while incarcerated Ryan was also convicted or murder and arson, after killing another inmate and setting the inmate's cell on fire. *See, Matter of Selsky*, 2008 NY Slip Op 01880 [49 A.D.3d 926] March 6, 2008 (Denying Ryan's Article 78 Proceeding challenging his placement in administrative segregation). Hart has been in DOCCS custody since 1981, after being convicted of multiple counts of robbery and murder. Prior to the events leading to this lawsuit, Hart escaped from prison once, and attempted to do so on another occasion. *See, People v. Hart*, 93 N.Y.2d 825, 826, 710 N.E.2d 263, 264 (1999) ("In 1981, defendant was convicted of two counts of murder, two counts of robbery in the first degree and one count of robbery in the second degree. He was sentenced to concurrent terms of 25 years to life for the murder convictions, followed by one consecutive 10–to–20–year sentence for robbery in the first degree. In 1983, while serving the foregoing sentence, defendant escaped from the Elmira Correctional Facility and was subsequently convicted of escape in the first degree and sentenced to a consecutive term of 2 to 4 years. In 1988, defendant was convicted of attempted escape in the first degree and was sentenced to another consecutive term of 1 ½ to 3 years.").

[2] *See, Ryan v, Selsky*, 49 A.D.3d 926, (3d Dept. 2008).

[3] *Id*.

[4] These aggregate sentences include the sentences that were imposed following Hart's and Ryan's criminal convictions for the escapes and attempted escapes discussed herein.

escapes from custody.  In 1979, Ryan escaped from the Rikers Island.[5]  In 1983, Hart escaped from Elmira Correctional Facility ("Elmira") by cutting through window bars.  In 1988, Hart again attempted an escape, this time from Green Haven Correctional Facility ("Green Haven"), by partially sawing through the bars of his cell window, while possessing ropes, hacksaw blades, a grappling hook, a flashlight, duct tape and travel directions.[6]  Finally, in November 1994, both Ryan and Hart, along with two other inmates, escaped from Shawangunk Correctional Facility ("Shawankgunk").  After each completed escape, Plaintiffs were quickly re-captured.

Following the 1994 escape from Shawangunk, both Ryan and Hart served lengthy administrative disciplinary sentences for the escape in the SHU.  Specifically, Hart served a 15-year SHU sentence, while Ryan served an 11 ½-year SHU sentence.  The general conditions of such confinement were evidently typical of SHU confinement in New York State prisons, in which

> the prisoner is[ ] placed in a solitary confinement cell, kept in his cell for 23 hours a day, permitted to exercise in the prison yard for one hour a day, limited to two showers a week, and denied various privileges available to general population prisoners, such as the opportunity to work and obtain out-of-cell schooling. Visitors are permitted, but the frequency and duration is less than in general population. The number of books allowed in the cell is also limited.

*Vance v. State of New York Dep't of Corr.*, No. 918CV0748MADATB, 2018 WL 6047828, at *5 (N.D.N.Y. Nov. 19, 2018) (quoting *Palmer v. Richards*, 364 F.3d 60, 66 n.3 (2d Cir. 2004, with internal quotation marks and alterations omitted).  Although, Plaintiffs

---

[5] *See*, https://www.nytimes.com/1979/06/12/archives/prisoner-convicted-in-1977-east-side-murder-flees-jail-on-rikers.html; *see also, Ryan v. Selsky*, 49 A.D.3d 926 (3d Dept. 2008) (Mentioning that Ryan had been convicted of "two counts of escape involving separate facilities," apparently referring to Rikers Island and, later, Shawangunk Correctional Facility).

[6] ECF No. 31.

emphasize in this action that SHU confinement also involves other deprivations such as lack of access to religious services; lack of adequate access to law library services; lack of rehabilitative programs; lack of privacy when discussing religious and medical matters; meals that are unappetizing and/or nutritionally inadequate; subpar medical care; and confinement in close proximity to mentally-ill prisoners[7] serving disciplinary sentences who generate constant deafening noise and sickening odors.[8]

After Plaintiffs' disciplinary SHU sentences were completed, DOCCS Central Office determined that Plaintiffs should remain in the SHU, pursuant to DOCCS' Central Office Ad Seg policy. In that regard, while Central Office Ad Seg is characterized by DOCCS as a non-punitive type of confinement, it involves placement of inmates into SHU solitary-confinement cells alongside inmates who are serving disciplinary sentences in SHU. For the most part, conditions of confinement for Central Office Ad Seg inmates in SHU are the same as those for inmates serving disciplinary sentences in SHU, though inmates serving disciplinary sentences typically remain in SHU for much shorter periods. Inmates serving disciplinary sentences in SHU also have a definite date upon which their SHU sentences will end, whereas the term of SHU confinement for Central Office Ad Seg inmates is open-ended. Additionally, Plaintiffs allege that inmates serving disciplinary sentences in SHU have some additional privileges that Ad Seg inmates do not have, such as access to the commissary and the use of computer tablets for legal research.[9]

According to Plaintiffs, "the Central Office Ad Seg recommendation is usually written by a member of the Inspector General's Office and [ ] will allege that the prisoner

---

[7] The Complaint refers to Attica's SHU as "a psychiatric ward." Complaint at ¶ 95.
[8] Complaint (ECF No. 1) at pp. 4-26.
[9] Complaint at ¶ ¶ 40-41, 117-119.

escaped previously [or] committed an act of violence or some other form of misconduct considered serious" enough that they need to be isolated from inmates and staff.[10] The general procedure involved in placing and maintaining an inmate in Central Office Ad Seg was recently explained by the U.S. Court of Appeals for the Second Circuit as follows:

> In the DOCCS system, there are two relevant reasons for prison administrators to send an inmate to the SHU—Disciplinary Segregation and Administrative Segregation ("Ad Seg"). Disciplinary Segregation, as its name suggests, is designed to discipline an inmate found guilty of a "Tier III" violation, the most serious of three infraction levels in the DOCCS system. N.Y. Comp. Codes R. & Regs. tit. 7, §§ 270.2, 270.3(a)(3), 301.2. A Disciplinary Segregation term lasts "for a designated period of time as specified by the hearing officer." *Id*. § 301.2(a). Once that time elapses, the statute does not empower DOCCS to punish the inmate doubly for the same infraction by imposing further Disciplinary Segregation. *See id*.

> Ad Seg serves a different purpose. As relevant here, Ad Seg removes an inmate from the general population when he "pose[s] a threat to the safety and security of the [prison] facility." *Id*. § 301.4(b). Given the importance of that purpose, Ad Seg is flexible and accords DOCCS officials substantial discretion in deciding whether to impose an Ad Seg term. Ad Seg terms are open-ended and do not require that DOCCS predetermine when it will release an inmate—"[a]t any time when deemed appropriate [by DOCCS], an inmate may be evaluated and recommended for return to general population." *Id*. § 301.4(e)

> There is, however, a constitutional ceiling on that flexibility: To ensure that a state prison facility does not use Ad Seg as a pretext to commit an inmate to the SHU indefinitely, the Due Process Clause of the Fourteenth Amendment mandates that prison officials periodically review whether an inmate continues to pose a threat to the facility. *Hewitt v. Helms*, 459 U.S. 460, 477 n.9, 103 S.Ct. 864, 74 L.Ed.2d 675 (1983), *abrogated in part on other grounds by Sandin v. Conner*, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995). New York effectuates that mandate by providing an inmate with an initial hearing within fourteen days of his confinement in Ad Seg, see N.Y. Comp. Codes R. & Regs. tit. 7, §§ 254.6, 301.4(a), and with reviews conducted pursuant to section 301.4(d) of the DOCCS regulatory

---

[10] Complaint at ¶ 19.

code ("section 301.4(d) reviews") every sixty days until he is returned to the general population, *see id*. § 301.4(d).

Section 301.4(d) review . . . is a three-step process. First, a committee commonly referred to as the "Facility Committee," consisting of "a representative of the facility executive staff, a security supervisor, and a member of the guidance and counseling staff," convenes to review the inmate's institutional record. *Id*. § 301.4(d)(1). The Facility Committee prepares and submits to the superintendent of the prison a report outlining "(i) reasons why the inmate was initially determined to be appropriate for [Ad Seg]; (ii) information on the inmate's subsequent behavior and attitude; and (iii) any other factors that [the committee] believe[s] may favor retaining the inmate in or releasing the inmate from [Ad Seg]" and recommending whether to continue the inmate's SHU term. *Id*.

Second, the superintendent forwards the Facility Committee's report and any written response that the inmate submits to a "Central Office Committee" located at DOCCS headquarters in Albany, New York, for "Central Office Review." The Central Office Committee, "consisting of a representative from the office of facility operations, a member of [the DOCCS] inspector general's staff, and an attorney from the office of counsel," reviews the Facility Committee's report, develops its own recommendation whether the inmate continues to pose a safety threat to the facility, and forwards the paperwork to the deputy commissioner of DOCCS. *Id*. § 301.4(d)(3).

Third, the deputy commissioner reviews the two committees' recommendations, as well as the inmate's written statement when applicable, and decides whether to continue the inmate in Ad Seg. *Id*. Once the deputy commissioner makes a final decision, he or she notifies the superintendent of the inmate's prison facility, who provides written notice to the inmate of the decision and its "reason(s)," and a statement notifying the inmate of his right to submit a written statement in the next section 301.4(d) review. *Id*. § 301.4(d)(4).

*Proctor v. LeClaire*, 846 F.3d 597, 601–02 (2d Cir. 2017) ("*Proctor*")[11] (footnote omitted).[12]

---

[11] Incidentally, Patrick Proctor, the Plaintiff-Appellant in *Proctor v. LeClaire*, was one of the four inmates who, along with Hart and Ryan, escaped from Shawangunk in 199. *See, id*. at 602.

[12] Notwithstanding the deliberative process described in the foregoing paragraphs, in Proctor the Second Circuit discussed evidence adduced by the Plaintiff-Appellant which had raised triable issues of fact as to

Plaintiffs Hart and Ryan, as a consequence both of their disciplinary sentences and their subsequent placement in Central Office Ad Seg, have remained continuously in SHU since 1994. Ryan's term of Central Office Ad Seg confinement began in or about April 2006,[13] while Hart's term began on October 29, 2009,[14] meaning that they have now been in Ad Seg for 15 years and 11 years, respectively.

On December 12, 2016, the two Plaintiffs commenced this action by filing a Complaint (ECF No. 1) that, again, generally contends that Central Office Ad Seg inmates are being kept in SHU permanently, due to DOCCS officials failure to provide them the required due process, and that such long-term isolation in SHU in term results in a variety of constitutional violations based on the living conditions in SHU. A central theme of the Complaint is that it is physically, spiritually and emotionally harmful, and contrary to any legitimate penological justification, to house Administrative Ad Seg inmates in the punitive environment of the SHU for long periods. The other main theme is that DOCCS officials do not actually follow the Central Office Ad Seg procedural protections discussed earlier, but, instead, conduct sham proceedings designed to keep Central Office Ad Seg inmates in SHU indefinitely. More specifically, the Complaint purports to assert six (6) separate causes of action.

The First Cause of Action alleges that the conditions of confinement in SHU prevent Plaintiffs from practicing their religion (Catholicism), in violation of the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA").

whether DOCCS was providing constitutionally meaningful review of inmates' placement in Central Office Ad Seg. Id., 846 F.3d at 612-614. Such evidence included statements by DOCCS officials indicating that "the standard DOCCS practice is that an inmate 'never' gets out once he has been placed in Ad Seg." Id. at 612.

[13] *Ryan v. Selsky*, 49 A.D.3d at 926.
[14] ECF No. 24-1 at p. 28.

In this regard, Plaintiffs contend that they, along with all other inmates in SHU, are denied access to "communal and denominational worship services," "private religious counseling," and "any type of religious activities which cannot be performed in a cell by oneself." Plaintiffs allege that with regard to Central Office Ad Seg inmates, such denial is not reasonably related to any legitimate penological interest.

The Second Cause of Action alleges that Administrative Ad Seg inmates placed in SHU have only limited access to law library materials, which in at least one instance has denied Hart access to the courts, all in violation of Plaintiffs' rights under the Sixth and Fourteenth Amendments. The Complaint states, for example, that prison law libraries are now largely computerized, but Central Office Ad Seg inmates have no access to computers. The Complaint further indicates that Central Office Ad Seg inmates have no way to learn of new legal rulings since they do not have access to "advance sheets." The Complaint additionally contends that the procedure within SHU for inmates to request legal materials from the law library is impermissibly cumbersome and time consuming, since it requires inmates to request materials using "the exact citations of case law and statutes."

The Third Cause of Action alleges that Defendants have violated Plaintiffs' Fourteenth Amendment Procedural Due Process rights by failing to provide the required periodic review of Plaintiffs' Ad Seg status. In that regard, the Complaint alleges that Defendants have, in some instances, failed to conduct reviews altogether, and, in other cases, have performed perfunctory reviews that were not "meaningful" in a constitutional sense. Plaintiffs allege that DOCCS officials are required to perform such reviews at specified intervals, but that in some instances the reviews have not occurred. Plaintiffs

also maintain that when such reviews have occurred, there has been no real discussion or consideration by the committee members involved in the review process, and that those parties have simply "rubber stamped" the recommendation of the facility deputy superintendent for security, who typically drafts the Facility Committee's report. Plaintiffs indicate that the periodic review reports are often simply copied verbatim from prior reports, and sometimes contain false information. Alternately, Plaintiffs contend that the reports rely almost exclusively on Plaintiffs' past misconduct, some of which was committed decades earlier, without considering whether Plaintiffs pose any current threat. Plaintiffs also state that there are no standards or criteria by which they may earn their release from Ad Seg, and that their conditions of confinement are so restrictive that they have no opportunity to demonstrate progress or personal growth, such as might cause DOCCS officials to conclude that they no longer pose a risk of escape. In sum, Plaintiffs allege that the review process is a sham, and that placement in Central Office Ad Seg is, based on DOCCS practices, essentially permanent.[15]

The Fourth Cause of Action alleges that the "horrible conditions" in SHU violate the 8th Amendment's prohibition on cruel and unusual punishment, particularly as they are experienced by long-term Ad Seg inmates. Plaintiffs allege, for example, that they are constantly exposed to the oppressive noises, odors and disruptive behaviors of mentally ill inmates serving disciplinary sentences; that meals in SHU are frequently unappetizing and inadequate, leaving inmates in a constant state of hunger; that medical

---

[15] For example, in one of his responses to a review report, Hart stated: "These sixty (60) day ad seg review are generated to satisfy the law. Nothing more. They are written in a routinely [sic] and repetitive fashion and contain inaccurate, misleading and out right false information. They rely on decades-old incidents that can (and will) never change. They are also written in a spiteful and vindictive manner. And they are not 'meaningful' in any sense of the word." ECF No. 31.

care for SHU inmates is subpar; that SHU inmates are not provided adequate means of cutting their hair or trimming their nails; and that SHU facilities for visitors are dirty and inadequate. Plaintiffs contend that long-term confinement under such conditions, such as is experienced by Central Office Ad Seg inmates in SHU, is unnecessarily torturous, inhumane and harmful to inmates' mental and physical health, and violates contemporary standards of decency.

The Fifth Cause of Action contends that Central Office Ad Seg inmates are treated far worse than inmates confined to SHU for disciplinary reasons, without any rational basis, thereby violating the Fourteenth Amendment's Equal Protection Clause. Plaintiffs state, for instance, that inmates in SHU for disciplinary reasons receive rehabilitative programs, computer tablets, phone calls and commissary items, whereas Central Office Ad Seg inmates do not. Plaintiffs maintain that this alleged disparate treatment is particularly inappropriate since Ad Seg confinement is supposed to be non-punitive.[16]

The Sixth Cause of Action alleges that, for the same reasons already mentioned, Central Office Ad Seg confinement violates Plaintiffs' Fourteenth Amendment Substantive Due Process rights, since it is "arbitrary, conscience-shocking and oppressive, and is so egregious and outrageous that it shocks the contemporary conscience."[17] In support of this claim, Plaintiffs contend that Defendants have, for decades, used such confinement to create "a *de facto* permanent solitary confinement to SHU,"[18] despite being aware of the damaging effects of such confinement. In this regard, Plaintiffs allege that while conditions in SHU are bad, and, indeed,

---

[16] Defendants admit that "Ad seg is not punitive but exists solely for the safety of the facility and inmates." ECF No. 24-2 at p. 1.
[17] Complaint at ¶ 124.
[18] Complaint at ¶ 125.

unconstitutional, for inmates serving relatively brief disciplinary sentences, they are even worse for Ad Seg inmates, since Ad Seg inmates' exposure to those conditions is essentially permanent and unrelenting.

On August 3, 2017, the Court issued an Order (ECF No. 22) indicating that it had screened the Complaint pursuant 28 U.S.C. § 1915A and had found, "at this early stage," that Plaintiffs' claims were sufficient to proceed.

Nevertheless, on August 21, 2017, Defendants filed a motion (ECF No. 24) purportedly seeking "partial summary judgment pursuant to Rule or [sic] 12(b) of the Federal Rules of Civil Procedure." Despite the reference in Defendant's Notice of Motion to "partial summary judgment," Defendants were, according to their accompanying memo of law, actually moving only for dismissal and not for partial summary judgment.[19]

Defendants first contend that any aspects of Plaintiffs' claims that arose more than three years prior to the date the action was commenced are time-barred under the three-year statute of limitations for Section 1983 claims. In that regard, Defendants maintain that the matters complained of in Plaintiffs' Complaint are all "discrete acts" that do not fall under the "continuing violation doctrine." Consequently, Defendants assert, with regard to all six causes of action, that "[a]ll claims pertaining to events occurring prior to December 12, 2013 should be dismissed."

Defendants next contend that Plaintiffs' Substantive Due Process claim fails as a matter of law, since "numerous courts, both State and Federal," have already rejected the argument that it violates Substantive Due Process to confine non-punitive Ad Seg inmates in SHU conditions. Alternatively, Defendants maintain that Plaintiffs have not pleaded

---

[19] See, ECF No. 24-2 at p. 12 ("The Complaint should be dismissed as to all claims except Plaintiff Ryan's procedural Due Process Claims beginning December 12, 2013.").

conditions that are arbitrary, conscience-shocking or oppressive in a constitutional sense. Additionally, Defendants indicate that while Plaintiffs have alleged that their conditions of confinement (long-term confinement in SHU) could be harmful to some inmates, they have not alleged that they themselves have actually suffered harmful physical or psychological effects therefrom.

Defendants further contend that the Court should dismiss all claims for money damages involving substantive due process and conditions of confinement (but apparently not claims involving procedural due process), on the grounds of qualified immunity. On this point, Defendants argue that they are entitled to such immunity since there is no legally binding precedent indicating that it is unconstitutional to keep inmates in long-term Central Office Ad Seg confinement. Rather, Defendants state that courts have repeatedly upheld the constitutionality of such confinement.

Finally, Defendants argue that Plaintiff Hart's procedural due process claims must be dismissed since the documentary evidence which they have submitted (consisting of copies of Hart's Ad Seg reviews spanning December 2014 to October 2016, which, they maintain, are integral to the Complaint) indicates as a matter of law that Hart received meaningful reviews of his Central Office Ad Seg placement. On this point, Defendants state that the reports indicate that Hart's reviews were performed according to established New York State procedures, and that it is irrelevant whether, as Hart contends, the reports used false or misleading information about Hart to justify his continued detention in Ad Seg, since courts are not permitted, as part of a procedural due process inquiry, to review the "substance" of a determination by corrections officials that an inmate should remain in Ad Seg.

Plaintiffs oppose Defendants' Motion. Plaintiffs first contend that Defendants' argument concerning the statute of limitations is incorrect, since the continuing violation doctrine applies to their claims.[20] Plaintiffs further dispute Defendants' contention that the Complaint fails to plead a "conscience-shocking" substantive due process claim. Plaintiffs assert, in that regard, that they have plausibly alleged that long-term solitary confinement in SHU amounts to torture, and that the documented cumulative effects of such confinement, of which Defendants were aware, include the development of mental illness. Plaintiffs further contend that they have personally experienced harmful effects from such confinement. Additionally, Plaintiffs contend that such confinement is all the more conscience shocking since it is unnecessary and would not have occurred if Defendants had properly and meaningfully conducted the periodic Ad Seg reviews. Next, Plaintiffs contend that qualified immunity does not apply to any of the defendants, since the constitutional rights which Plaintiffs allege were violated were all clearly established, such that a reasonable defendant would have realized that he was violating Plaintiffs' rights. Plaintiffs also contend that Defendants are not entitled to judgment on Hart's procedural due process claims since there are clearly disputed issues of material fact. Plaintiffs assert, for example, that there are issues of fact as to whether Defendants conducted all of the required reviews of Hart's Ad Seg status;[21] whether the periodic reviews of Hart's ad seg status that were conducted were based on false or misleading information; whether the reviewers gave any consideration to Hart's statements as required; and whether the reviewers relied primarily if not exclusively on Hart's conduct

---

[20] In that regard, however, the *pro se* Plaintiffs evidently misunderstand the doctrine to pertain to any claims that have been "continuing" for a long period of time.

[21] Plaintiffs state, for example, that Hart received no reviews whatsoever for almost a year, between October 19, 2016 and September 20, 2017.

from decades earlier while failing to consider whether he currently posed a threat to institutional safety.

Notably, in addition to filing a responding memorandum of law, Plaintiffs filed several affidavits and accompanying exhibits. (ECF Nos. 31, 32, 35, 36, 37, 39).[22] Plaintiffs indicate that they have filed the affidavits in an abundance of caution, since, as already mentioned, Defendants' Notice of Motion refers to Defendants seeking "partial summary judgment." Plaintiffs maintain that it would be inappropriate for the Court to grant summary judgment without first allowing them to conduct discovery. Nevertheless, Plaintiffs indicate that have submitted affidavits and exhibits just in case the Court decides to treat Defendants' motion as one for summary judgment.

On November 1, 2017, Defendants filed an Amended Notice of Motion. (ECF No. 33). The sole purpose of the amended notice was apparently to remove the reference to "partial summary judgment" that had appeared in Defendants' original Notice of Motion (ECF No. 24), apparently due to an editing oversight. Otherwise, the Amended Notice of Motion merely reiterated that Defendants were moving for partial dismissal pursuant to Fed. R. Civ. P. 12(b)(6).

Also, on November 1, 2017, Defendants filed a motion (ECF No. 34) to strike the

---

[22] ECF No. 31 is an affidavit from Hart intending to show both that the alleged constitutional violations have been "continuing" and that Defendants have not conducted proper periodic reviews. ECF No. 32 is an affidavit from Hart purporting to show that that Defendants have not conducted proper reviews for Ryan; that Ryan has filed grievances concerning conditions in SHU; that Plaintiffs have personally suffered the effects of long-term confinement in SHU; and that the review process is a sham. ECF No. 35 is an affidavit from Hart purporting to further show that information included in Hart's period Ad Seg reviews was false. ECF No. 36 is an affidavit from Hart, along with a memo of law, urging the Court to disregard Defendant's Amended Notice of Motion (ECF No. 33). ECF No. 37 is an affidavit from Hart further purporting to show that information contained in Hart's Ad Seg reviews is false and that reviews have been skipped. ECF No. 39 is another affidavit from Hart, indicating that Ad Seg inmates are still not receiving reviews, and that when reviews are performed DOCCS officials fail to properly weigh the inmates' more-recent good behavior.

affidavits that Plaintiffs filed in response to Defendants' original motion. In that regard, Defendants argue that the affidavits are exhibits should not be considered on a Rule 12(b)(6) motion since they are neither part of nor integral to the Complaint.

The Court has considered the Complaint and the Parties' submissions.

DISCUSSION

Plaintiffs Are Proceeding *Pro Se*

Since Plaintiffs are proceeding *pro se*, the Court has construed their submissions liberally, "to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994).

Motions Under Rule Fed. R. Civ. P. 12(b)(6)

It is now clear that Defendants are not seeking partial summary judgment and are only seeking partial dismissal under Rule 12(b)(6). The legal standards to be applied on a motion to dismiss pursuant to Rule 12(b)(6) are clear:

> To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

*Progressive Credit Union v. City of New York*, 889 F.3d 40, 48 (2d Cir. May 1, 2018).

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964–65, 167 L.Ed.2d 929 (2007); *see also, ATSI Communications, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 98 (2d Cir. 2007) ("To survive dismissal, the plaintiff must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.' ") (quoting *Bell Atl. Corp. v. Twombly*) (footnote omitted).

When applying this "plausibility standard," the Court is guided by "two working principles":

> First, although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss, and determining whether a complaint states a plausible claim for relief will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (citations and internal quotation marks omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679, 129 S.Ct. 1937, 1950 (2009) (citation omitted).

Defendants' Motion to Strike

Defendants have moved to strike the affidavits and exhibits that Plaintiffs filed in response to Defendants' original motion, contending that the affidavits and exhibits fall outside the scope of what the Court may properly consider on a Rule 12(b)(6) motion.  It is clear that when addressing a Rule 12(b)(6) application,

> the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents

"integral" to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence.

*Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. Jun. 3, 2014) (citations and internal quotation marks omitted).

"A matter is deemed 'integral' to the complaint when the complaint 'relies heavily upon its terms and effect.' Typically, an integral matter is a contract, agreement, or other document essential to the litigation." *Palin v. New York Times Co.*, 940 F.3d 804, 811 (2d Cir. 2019). "For a court to regard a document as 'integral,' 'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document,' and '[i]t must also be clear that there exist no material disputed issues of fact regarding the relevance of the document.'" *Clybourn v. Spiderbands LLC*, No. 18 CIV. 03688 (ER), 2018 WL 6528234, at *2 (S.D.N.Y. Dec. 12, 2018) (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

*DPC New York, Inc. v. Scottsdale Ins. Co.*, No. 19 CIV. 1743 (PGG), 2020 WL 2555241, at *5 (S.D.N.Y. May 19, 2020).

Here, it was not unreasonable for Plaintiffs to submit affidavits, considering that Defendants had indicated in their original notice of motion that they were moving for partial summary judgment. However, now that Defendants have corrected that error and clarified that they are only seeking relief under Rule 12(b)(6), it is clear that some of the materials submitted by Plaintiffs should not be considered, while other materials could be considered. In particular, the affidavits should not be considered, while most, if not all, of the exhibits attached to the affidavits, consisting primarily of Plaintiffs' Ad Seg review reports, could be considered as integral to the Complaint. However, the Court need not engage in a lengthy discussion of the voluminous exhibits to explain which ones are integral to the Complaint and which are not, since the Court finds that, with one exception

not involving the disputed documents,[23] Plaintiffs' Complaint is sufficient on its own to withstand Defendants' motion to dismiss, without regard to the later-filed affidavits and exhibits. Consequently, Defendants' motion to strike (ECF No. 34) is denied as moot. The Court will now turn to the merits of Defendants' motion to dismiss.

<u>Section 1983</u>

Plaintiffs are suing pursuant to 42 U.S.C. § 1983. "In order to establish individual liability under § 1983, a plaintiff must show (a) that the defendant is a 'person' acting 'under the color of state law,' and (b) that the defendant caused the plaintiff to be deprived of a federal right." *Back v. Hastings On Hudson Union Free Sch. Dist.*, 365 F.3d 107, 122 (2d Cir. 2004) (citation omitted).

<u>Statute of Limitations</u>

Defendants first contend that Plaintiffs' claims, all of which purportedly arise under 42 U.S.C. § § 1983 and 1985, are barred to the extent that they arose more than three years prior to the filing of this action. Defendants' relatively terse argument on this point focuses primarily on Plaintiff's Fourteenth Amendment Procedural Due Process claim, and maintains that the "continuing violation doctrine" does not apply to such claim. Defendants then add, without further explanation, that "This is true for both the Due Process claims *and the conditions of confinement claims*." (emphasis added).

Plaintiffs do not dispute that a three-year-statute of limitations applies to Section 1983 claims, nor do they maintain that any period of tolling should apply. However, they contend that their claims are nevertheless timely under the continuing violation doctrine.

The general law on these points is well settled:

---

[23] As will be discussed below, some of Plaintiff's procedural due process claims are time-barred.

The statute of limitations for actions brought in New York pursuant to §§ 1983 and 1985 is three years. *See Paige v. Police Dep't of City of Schenectady*, 264 F.3d 197, 199 n.2 (2d Cir 2001) (§§ 1983 and 1985); *Okure v. Owens*, 816 F.2d 45, 49 (2d Cir. 1987) (§ 1983). Claims brought pursuant to §§ 1983 and 1985 accrue "once the plaintiff knows or has reason to know of the injury which is the basis of his action." *Cornwell v. Robinson*, 23 F.3d 694, 703 (2d Cir. 1994) (internal quotation marks omitted). Under the continuing violation doctrine, a plaintiff may bring claims that would otherwise be barred by the statute of limitations provided that "an act contributing to that [violation] took place within the statutory time period." *Purcell v. N.Y. Inst. of Tech. - Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019). The continuing violation doctrine applies only "to claims that by their nature accrue only after ... some threshold amount of mistreatment," and not to "discrete unlawful acts, even where those discrete acts are part of a serial violation." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (internal quotation marks omitted).

*Sant v. Stephens*, 821 F. App'x 42, 44–45 (2d Cir. 2020).

Here, the Court agrees with Defendants that the continuing violation doctrine does not apply to Plaintiff's procedural due process claims, since the reviews of Plaintiffs' Ad Seg placement are discrete acts. *See, Gonzalez v. Hasty*, 802 F.3d 212, 223 (2d Cir. 2015) ("[A] discrete claim may accrue under the Fifth Amendment each time that a defendant fails to provide an inmate with the notice, hearing, or evaluation to which he is entitled after a liberty interest attaches. These denials or failures are discrete acts, which may combine to form a "serial violation." But *Morgan* forecloses the continuing violation doctrine's application to claims of this nature. [*Natl' R.R. Passenger Corp. v.*] *Morgan*, 536 U.S. [101,] 114–15, 122 S.Ct. 2061 [(2002)]."); *see also, Smith v. Annucci*, No. 6:18-CV-06261 EAW, 2019 WL 539935, at *5 (W.D.N.Y. Feb. 11, 2019) ("The procedural due process violations complained of by Plaintiff in this case, while arguably part of a serial violation of his constitutional rights, constitute discrete unlawful acts. Plaintiff could have brought a claim for violation of his right to procedural due process each time his

administrative segregation was continued."). Consequently, Defendants' motion to dismiss is granted as to Plaintiffs' procedural due process claims that are based on Ad Seg reviews that took place more than three years prior to the commencement of this action.

As for Plaintiffs' remaining claims, Defendants merely assert that Plaintiffs' "conditions of confinement claims" are also time barred since Plaintiffs could have challenged the alleged conditions of confinement violations at the time they occurred by filing either an inmate grievance or an Article 78 proceeding.[24] The Court understands Defendants to argue that Plaintiffs' claims under the First, Sixth and Eighth Amendments, as well as their Fourteenth Amendment equal protection and substantive due process claims, fall outside of the continuing violation doctrine.

However, Defendants have not attempted to explain how Plaintiffs' Eighth Amendment Claims and Substantive Due Process Claims, both of which are based on the long duration and cumulative effects of Plaintiffs' putatively non-punitive confinement in SHU, are ineligible for inclusion under the continuing violation doctrine. *See, e.g., Smith v. Annucci*, 2019 WL 539935 at *7 ("[U]nlike his procedural due process claim, Plaintiff's Eighth Amendment claims state a continuing violation, because they did not accrue until sufficient time had passed to render Plaintiff's continued confinement cruel and unusual. *See Gonzalez* [*v. Hasty*] , 802 F.3d [212,] 224 [(2d Cir. 2015)] ("An Eighth Amendment claim predicated on SHU confinement ... typically accrues only after an inmate has been confined in the SHU for a prolonged period of time.... [The plaintiff's Eighth Amendment] claim as he has pled it, assuming it otherwise is viable, accrued only after the defendants

---

[24] *See*, Defs. Memo of Law, ECF No. 24-2 at p. 5 ("This is true for both the Due Process claims and conditions of confinement claims.").

had confined him in the SHU for some threshold period of time. This renders the continuing violation doctrine applicable.")).

Neither have Defendants shown at this stage of the litigation that Plaintiffs' claims under the First and Sixth Amendments, or Plaintiffs' Fourteenth Amendment equal protection claim, are necessarily time barred, since they did not make any detailed statute-of-limitations argument concerning those claims in their moving papers[25] and did not file a reply to Plaintiffs' response. Accordingly, the Court finds that Defendants have not shown that they are entitled to dismissal on statute of limitations grounds as to those claims.

To reiterate, insofar as Defendants' motion to dismiss is based on the statute of limitations, it is granted as to any procedural due process claims that arose more than three years prior to the commencement of this action, but is otherwise denied.

The Substantive Due Process Claim[26]

Defendants next contend that Plaintiffs' substantive due process claim must be dismissed since "claims that ad seg violates [inmates'] Substantive Due Process rights because [the inmates] are not punitively confined yet are subject to SHU conditions ha[ve] been considered and rejected by numerous courts, both State and Federal." Phrased in this manner, Defendants' argument implies that it is settled law that an inmate placed in Central Office Ad Seg cannot assert a meritorious substantive due process claim based on the conditions in SHU.

---

[25] *See*, Def. Memo of Law [#24-2] at pp. 4-6.
[26] Defendants have not offered a basis to dismiss Plaintiffs' equal protection claims. In that regard, as part of Defendants' arguments concerning substantive due process, they make a single passing reference to "equal protection," but do not make a reasoned argument for dismissing Plaintiffs' Equal Protection claim. ECF No. 24-2 at p. 6.

However, the cases that Defendants have cited are neither binding on this Court nor apposite to Plaintiffs' claims in this action.  For example, in *Matter of Rifkin v. Goord*, 273 A.D.2d 878, 880 (4ᵗʰ Dept. 2000), the New York State Supreme Court, Appellate Division Fourth Department, affirmed the dismissal of a substantive due process claim by an inmate placed in administrative segregation in the SHU, finding that the inmate did not have a liberty interest. *Id*. ("With respect to petitioner's substantive due process rights, petitioner's placement in administrative segregation does not 'trigger[ ] due process protection" because that "segregated confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest' (*Sandin v Conner*, 515 US 472, 485-486)").  However, there is no indication that the claim by the inmate in *Rifkin* was factually similar to the claims being asserted by Plaintiffs here, which involve confinement in Ad Seg for decades, allegedly without either procedural due process protection or any valid penological justification.   A second case cited by Defendants, *Tulloch v. Coughlin*, 1995 WL 780970 (W.D.N.Y. Dec. 22, 1995), is also inapposite for the same reasons.  In the third and final case cited by Defendants, *Rifkin v. Goord*, No. 99-CV-6479, 2005 WL 735943 (W.D.N.Y. Mar. 31, 2005), the federal court dismissed the inmate plaintiff's claims on collateral estoppel grounds, without addressing the merits of his claims.[27]  Consequently, none of the cases which Defendants have cited compel the Court to dismiss Plaintiffs' substantive due process claim.

Defendants nevertheless contend, alternatively, that the substantive due process

---

[27] It is not clear from this decision that Rifkin was even raising a substantive due process claim in federal court. *See, id*.  However, even if he was, the court granted summary judgment based on the collateral estoppel procedural bar, without addressing the merits of the claims.  Consequently, it is incorrect for Defendants to argue, as they did in their memo of law, that the "reasoning [of the state court] was upheld" by the federal court. See, Def. Memo of Law (ECF No. 24-2) at p. 6.

claim fails because Plaintiffs have "not pled a condition which is arbitrary, conscience-shocking, or oppressive in a constitutional sense."[28]   However, treating the factual allegations in the Complaint as true, as the Court must, the Court cannot say as a matter of law that Plaintiffs have failed to plead a condition that is shocking to the conscience. Again, in that regard, Plaintiffs allege that they have been confined in solitary confinement for decades, without procedural safeguards and without any legitimate penological justification.  Moreover, the Complaint alleges that Defendants have confined Plaintiffs in this manner despite knowing the harmful effects of such long-term solitary confinement.

Finally, Defendants contend that the Court should dismiss the substantive due process claim because even assuming that decades-long solitary confinement is potentially harmful to inmates' mental health, Plaintiffs have not alleged that they personally suffered mental health injury due to their Ad Seg confinement in SHU. However, the Court again disagrees with Defendants and finds that the reasonable inference from the facts alleged in the Complaint is that Plaintiffs personally suffered negative effects from their long-term confinement in SHU. *See, e.g.*, Complaint at ¶ 131 ("Defendants' actions have caused the named . . . Plaintiffs untold misery and suffering due solely to Plaintiffs' confinement to SHU, despite knowing the harmful effects of long-term SHU confinement."); *see also id*. at ¶ ¶ 14-16, 20, 80-90, 124-125 (alleging effects of long-term SHU confinement).

For these various reasons Defendants' motion to dismiss the substantive due process claim is denied.[29]

---

[28] Def. memo of Law (ECF No. 24-2) at p. 7.

[29] In finding that Defendants have not shown their entitlement to dismissal of the claim, the Court is not expressing any view concerning the claim's ability to withstand arguments that Defendants did not make. *See, e.g., H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 371 (N.D.N.Y. 2020)  ("The Court finds that

<u>Qualified Immunity</u>

Defendants next maintain that the "substantive due process claims and conditions of confinement claims" should be dismissed based on the concept of qualified immunity, which is an affirmative defense to claims for money damages under Section 1983:

> Section 1983 establishes a private right of action for money damages against state officials, acting "under color" of law, who violate a constitutional or statutory right. 42 U.S.C. § 1983. This "deter[s] governmental abuse and remed[ies] unlawful governmental transgressions." [*Johnson v.*] *Newburgh* [*Enlarged Sch. Dist.*,] 239 F.3d [246,] 250 [(2d Cir. 2001)]. At the same time, "permitting damages suits against government officials can entail substantial social costs, including the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). To balance the need for accountability and the potential chilling effect, "the Supreme Court established qualified immunity as an affirmative defense to § 1983 claims." *Newburgh*, 239 F.3d at 250. This defense is designed to "reduce[ ] the general costs of subjecting officials to the risks of trial" by immunizing them from monetary liability "based on unsettled rights." *Connell v. Signoracci*, 153 F.3d 74, 79 (2d Cir. 1998) (internal quotation marks omitted).
>
> Officers are entitled to qualified immunity "unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd*, 563 U.S. 731, 735, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) ).

*Edrei v. Maguire*, 892 F.3d 525, 532 (2d Cir. 2018).

Motions to dismiss under Rule 12(b)(6) based on qualified immunity are not

---

Plaintiff's claims of unconstitutional conditions of confinement and deliberate indifference to his medical needs are all encompassed by a more specific constitutional provision–the Eighth Amendment–and, as a result, the Substantive Due Process Clause is not the appropriate vehicle for those claims.") (collecting cases).

typically granted, owing to the often fact-intensive nature of the defense. *See, e.g., Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020) (Referring to "the mismatch between the 12(b)(6) plausibility standard and the often fact-intensive nature of qualified-immunity inquiries."). However, such a dismissal under Rule 12(b)(6) may be appropriate where, for example, a defendant can demonstrate that, as a matter of law, the constitutional right that is alleged to have been violated was not "clearly established" at the time of the alleged violation:

> Although the applicability of a qualified immunity defense is often fact-intensive, "if, upon drawing every factual inference in favor of the plaintiff, the question is purely the state of the law at the time of a defendant's allegedly tortious conduct, so that the court can determine whether a reasonable state agent should have known that what he was doing violated the law, then a court can determine the availability of qualified immunity on a motion to dismiss under Rule 12(b)(6)." *Birch v. City of New York*, 184 F. Supp. 3d 21, 28 (E.D.N.Y. 2016), *aff'd*, 675 F. App'x 43 (2d Cir. 2017).

*Schultz v. Cty. of Suffolk*, No. 19CV0925JMAARL, 2020 WL 7699944, at *7 (E.D.N.Y. Sept. 4, 2020), report and recommendation adopted, No. 19CV925JMAARL, 2020 WL 7041090 (E.D.N.Y. Nov. 30, 2020).

In deciding whether a plaintiff's purported Section 1983 claim is based on a "clearly established" right, a court must determine whether the state of the law was sufficiently clear at the relevant time that any reasonable defendant would have known that his actions were unlawful:

> To be sure, "a case directly on point" is not required "for a right to be clearly established." *White v. Pauly*, —— U.S. ——, 137 S. Ct. 548, 551, 196 L.Ed.2d 463 (2017) (per curiam). At the same time, "existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* (emphasis added). "'Clearly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every 'reasonable official would understand that what he is doing' is unlawful." *Wesby*, 138 S. Ct. at

589 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). In practice, this means that "'controlling authority' or 'a robust consensus of cases of persuasive authority'" dictate the action at issue. *Id*. at 589–90 (quoting *al-Kidd*, 563 U.S. at 741–42, 131 S.Ct. 2074). A plaintiff must show with a high "degree of specificity," *Mullenix v. Luna*, 577 U.S. 7, 136 S. Ct. 305, 309, 193 L.Ed.2d 255 (2015) (per curiam), that the rule he seeks to apply prohibited the officer's conduct. *See Wesby*, 138 S. Ct. at 590; *see also City and County of San Francisco v. Sheehan*, 575 U.S. 600, 135 S. Ct. 1765, 1775–76, 191 L.Ed.2d 856 (2015) (noting that the Supreme Court has "repeatedly told courts ... not to define clearly established law at a high level of generality"). In other words, an official is immune from liability unless, under the particular circumstances the official faced, any "reasonable offic[ial]" would have "known for certain that the conduct was unlawful" under then-existing precedent. *Ziglar v. Abbasi*, —— U.S. ——, 137 S. Ct. 1843, 1867, 198 L.Ed.2d 290 (2017).

*Liberian Cmty. Ass'n of Connecticut v. Lamont*, 970 F.3d 174, 186–87 (2d Cir. 2020); *see also, Ziglar v. Abbasi*, 137 S. Ct. at 1866–67 ("It is not necessary, of course, that the very action in question has previously been held unlawful.  That is, an officer might lose qualified immunity even if there is no reported case directly on point.  But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent. . . . [Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.") (citations and internal quotation marks omitted).

In the instant action, Defendants contend that there is no "binding precedent" that would have alerted them that their actions were unlawful.  In doing so, Defendants frame the issues by stating that,

> [r]egarding conditions of confinement, the question presented is whether there is plain, legally binding precedent holding that keeping ad seg inmates in the conditions required by § 7 N.Y.C.R.R. 301.4(c) is unconstitutional. Regarding substantive Due Process, the question presented is whether there is plain binding precedent holding that keeping an inmate in ad seg for an extended period of time based on the recommendations of security experts is unconstitutional.

Def. Memo of Law (ECF No. 24-2) at p. 9.

However, the Court finds that "drawing every factual inference in favor of the plaintiffs," Defendants have not shown that they are entitled to dismissal based on qualified immunity. Indeed, Defendants have framed the issues incompletely, in a manner that overlooks Plaintiffs' factual allegations which, if proven, could establish that Plaintiffs were kept in Ad Seg in violation of their procedural due process rights and other rights that were clearly established at the relevant time. *See, Smith v. Annucci*, No. 6:18-CV-06261 EAW, 2019 WL 539935, at *7 (W.D.N.Y. Feb. 11, 2019) ("Here, the Court finds that there are issues of fact regarding Defendants' entitlement to qualified immunity. . . . If, as Plaintiff alleges, Defendants knowingly confined him in administrative segregation for multiple decades strictly for punitive reasons and without penological justification, the Court cannot conclude, at this stage of the proceedings, that qualified immunity would shield those actions."); *see also, id*. ("Plaintiff's Eighth Amendment claims are intertwined with his procedural due process claims – if Defendants have failed to provide any meaningful review of Plaintiff's status for more than 20 years but have instead held him in administrative segregation for solely punitive reasons, his right to due process and his right to be free from cruel and unusual punishment are both implicated."); *H'Shaka v. O'Gorman*, 444 F. Supp. 3d 355, 389–90 (N.D.N.Y. 2020) ("Faced with the questions of fact that remain to be resolved in this case, the Court finds that it would be inappropriate to conclude that Defendants are entitled to the protection of qualified immunity at this stage of the litigation. In particular, the Court notes that, although *Proctor* was decided in 2017 (after Plaintiff had already been in Ad Seg for a significant period of time, but still relevant to a portion of the period covered by this litigation), it was already well established

that due process must be afforded in a "meaningful manner." *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965); *accord Parratt v. Taylor*, 451 U.S. 527, 540, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981); *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Goldberg v. Kelly*, 397 U.S. 254, 267, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Therefore, if a factfinder were to conclude that the Ad Seg reviews were guided by a pre-determined conclusion rather than a fair assessment of the facts, it would arguably mean that Defendants did not afford due process in a meaningful manner. Additionally, as already discussed, the Supreme Court indicated in 2002 (well before Plaintiff was placed in Ad Seg) that the Eighth Amendment is violated by conditions that are totally without penological justification, and there remain material disputes of fact as to whether there was a legitimate penological justification for Plaintiff's continued retention in Ad Seg. *Hope*, 536 U.S. at 737, 122 S.Ct. 2508. As a result, Defendants could be potentially found to have violated clearly established law depending on how a factfinder were to resolve the disputed issues of fact."). Consequently, Defendants' motion is denied insofar as it is based on qualified immunity.

Procedural Due Process

Finally, Defendants maintain that they are entitled to dismissal of Hart's procedural due process claims as a matter of law, purportedly since "the relevant reports demonstrate that all three *Proctor* criteria were met, and none of these factors relied upon by the *Proctor* court to find a question of fact are present here." Def. Memo of Law (ECF No. 24-2) at p. 11. (Defendants have not similarly moved against Ryan's procedural due process claim)[30] In this regard, Defendants are referring to the relevant analysis set forth

---

[30] Defendants' motion (ECF No. 24) does not seek dismissal of Plaintiff Ryan's procedural due process claims, except insofar as they may have accrued more than three years prior to the commencement of

by the Second Circuit in *Proctor,* cited earlier, for evaluating procedural due process claims involving inmates kept in Central Office Ad Seg:

> [M]eaningful periodic reviews of Ad Seg must at least satisfy the following criteria:
>
> First, the reviewing prison officials must actually evaluate whether the inmate's continued Ad Seg confinement is justified. It is not sufficient for officials to go through the motions of nominally conducting a review meeting when they have developed a pre-review conclusion that the inmate will be confined in Ad Seg no matter what the evidence shows. Review with a pre-ordained outcome is tantamount to no review at all.
>
> Second, the reviewing officials must evaluate whether the justification for Ad Seg exists at the time of the review or will exist in the future, and consider new relevant evidence as it becomes available. [Periodic] Ad Seg reviews may not be frozen in time, forever rehashing information addressed at the inmate's initial Ad Seg determination. Rather, reviews must take into account prison conditions and inmate behavior as they change over time; those changes may modify the calculus of whether the inmate presents a current threat to the safety of the facility. The [relevant question] is not whether the confined inmate was a threat to the facility when he was confined initially; it is whether the inmate "remains a security risk" on the date of the periodic review. This is not to say that prison officials are barred from according significant weight to events that occurred in the past. Neither do we suggest that recent events categorically ought to be more salient in periodic reviews than those that occurred long ago. We conclude merely that prison officials must look to the inmate's present and future behavior and consider new events to some degree to ensure that prison officials do not use past events alone to justify indefinite confinement.
>
> Third and finally, the reviewing officials must maintain institutional safety and security (or another valid administrative justification) as their guiding principles throughout an inmate's Ad Seg term. SHU confinement that began for proper Ad Seg purposes may not morph into confinement that persists for improper purposes. . . . The state may not use Ad Seg as a charade in the name of prison security to mask indefinite punishment for past transgressions.

---

this action. *See*, ECF No. 24-2 at p. 12 ("The Complaint should be dismissed as to all claims except Plaintiff Ryan's procedural Due Process claims beginning December 12, 2013.").

*Proctor v. LeClaire*, 846 F.3d at 610–11 (citations omitted).

Defendants assert that the documentation which they have submitted establishes that Hart received meaningful review of his Ad Seg status as required by *Proctor*. Defendants essentially contend that the Court must accept the reasons set forth in the Ad Seg review documents at face value, since the Court is not permitted to review the "substance" of the committees' decisions. On this point, the Second Circuit in *Proctor* stated:

> Proctor's claim cannot serve as an appeal from his section 301.4(d) reviews. Procedural due process does not permit a court to review the substance of the Defendants' decision to confine Proctor in Ad Seg. We may not substitute our judgment for Defendants', nor may we rebalance the section 301.4(d) criteria. The Due Process Clause permits only an evaluation of whether Defendants' method of coming to their Ad Seg determination is sufficient.

*Proctor*, 846 F.3d at 608. Defendants interpret this to mean, for example, that the Court must ignore Plaintiffs' assertions that Hart's review documentation contains false and misleading information. *See*, Def. Memo of Law (ECF No. 24-2) at p. 11 ("Plaintiff Hart's response [maintains] that the [committees'] allegations pertaining to his behavior were untrue or pretextual. In doing so, he asks the Court to do precisely what may not take place on a procedural Due Process claim; to review the substance of the decision, to substitute its judgment for that of Attica security and administrative staff, and to accord staff's decision no deference at all.").

However, Defendants are incorrect on this point. Plaintiffs are not asking the Court to substitute its judgment or to re-balance the section 301.4(d) criteria. Rather, Plaintiffs are challenging the methods that Defendants used, which is plainly permitted by *Proctor*.

Indeed, the factual assertions by Plaintiffs here relating to those methods are quite similar to the ones that survived summary judgment in *Proctor*. The Complaint alleges, for example, that the review documentation contains fabricated accounts of misbehavior by Hart; that the reports frequently merely repeat information from earlier reports often utilizing identical language; that the reports themselves indicate that committee members never actually met to discuss Hart's situation; that the reports are really focused just on the conduct that resulted in Hart being placed in Ad Seg in the first place, and not on whether he presently poses any danger if released from Ad Seg; that Ad Seg inmates have no "goalposts" by which to earn their release from Ad Seg; and that no prisoner confined to Ad Seg for escape has ever been released from Ad Seg.

In sum, the Court finds that Defendants' motion to dismiss Hart's procedural due process claim must be denied since there are issues of fact as to whether the periodic reviews that he received comport with the requirements set forth in *Proctor*. *See, e.g., Smith v. Annucci*, 2019 WL 539935, at *4 ("Here, Plaintiff alleges that he has been deprived of any meaningful review of his continued confinement in administrative segregation, that Defendants have pre-ordained that he will remain in administrative segregation indefinitely, and that Defendants have failed to take into new relevant information regarding his dangerousness (or lack thereof) as it has become available. As assessed against the standards set forth in *Proctor*, Plaintiff has clearly set forth a viable procedural due process claim."); *see also, Walker v. Bellnier*, No. 917CV1008GTSCFH, 2019 WL 2479612, at *8 (N.D.N.Y. Jan. 15, 2019) ("Although similar language in periodic reviews "does not necessarily mean that the reviews" are a "sham," *see Zimmerman v. Seyfert*, No. 9:03-CV-1389 (TJM), 2007 WL 2080517, at *19 (N.D.N.Y. July 19, 2007),

taking the allegations in the Amended Complaint as true, at this stage in the litigation, the facts suggest that Defendants did not provide Walker with meaningful, periodic reviews regarding his continued administrative confinement."), report and recommendation adopted, No. 917CV1008GTSCFH, 2019 WL 1305825 (N.D.N.Y. Mar. 22, 2019).

## CONCLUSION

Defendants' motion to strike (ECF No. 34) is denied. Defendants' motion to dismiss (ECF No. 33) is granted in part, and any procedural due process claim that accrued prior to December 12, 2013 is dismissed. Otherwise, Defendants' motion to dismiss is denied.

SO ORDERED.

Dated: Rochester, New York
     July  15, 2021

ENTER:

CHARLES J. SIRAGUSA
United States District Judge